## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HUNT-GOLLIDAY, | ) |
| Plaintiff, | ) Case No. 13-cv-3023 |
| v. | ) Judge Sharon Johnson Coleman |
| COOK COUNTY | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Pasha Hunt-Golliday filed this suit against Cook County, Illinois asserting that Cook County's Facilities Management Department ("Facilities") discriminated against her on the basis of race and gender in violation of Title VII of the Civil Rights Act of 1964 and discriminated and retaliated against her based on her disability in violation of the Americans with Disabilities Act. Cook County now moves for summary judgment. For the reasons set forth below, this motion [98] is granted.

## Background

The following facts are undisputed.[1] Hunt-Golliday, an African-American woman, was hired as an Architectural Ironworker ("ironworker") by Facilities in 2004. (Dkt. 99, ¶¶ 1, 5). Facilities ironworkers work primarily at the Cook County Jail, where they maintain cell locks, metal gates and doors, fences, guard towers, vaults, and machinery. (*Id.* ¶ 7). Pursuant to a federal mandate, Cook County is required to maintain minimum staffing levels of ironworkers and other tradespeople at the jail. (*Id.* ¶ 43).

---

[1] In its reply brief, the defendant urges us to strike the Plaintiff's Statement of Facts for non-compliance with Local Rule 56.1(b). This Court agrees that Plaintiff has failed to comply with Local Rule 56.1(b)(3)(A) and (B), but declines to strike the Plaintiff's Statement of Facts in light of the nature of the noncompliance. All portions of the defendant's statement of facts that were not addressed in the plaintiff's statement of facts are deemed to be admitted in their entirety. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

From the time of her hiring until her subsequent transfer in 2006, Hunt-Golliday alleges that her coworkers would make harassing comments on the basis of her race and sex and that she consistently received the least favorable work orders. (Dkt. 99-2 57:3–61:4). On February 20, 2006, Hunt-Golliday cut her left hand while installing barbed wire on a fence. (Dkt. 99 ¶ 10). She sought treatment at Cermak hospital, where she was given a tetanus shot. (*Id.*). Unfortunately, Hunt-Golliday suffered an adverse reaction to that shot that caused her shoulder pain. (*Id.*; Dkt. 99-2, 126:17–23). When Hunt-Golliday returned to work on February 21st, she was involved in an incident in which a male coworker yelled at her and allegedly acted in a threatening manner after she failed to answer his radio calls. (*Id.* ¶ 12; 120-2 69:14-19). Hunt-Golliday promptly reported the incident, as well as other alleged incidents of harassment and discrimination, to Facilities deputy director Jim De Lisa. (Dkt. 116 ¶ 6).

After reporting the incident to De Lisa, Hunt-Golliday was instructed to have her arm examined by a county doctor. (Dkt. 99-2 113:23-114:1). As a result of the injury to her arm and her conflicts with her coworkers, Hunt-Golliday went onto duty disability on February 22, 2006. (Dkt. 99 ¶ 18). Hunt-Golliday remained on duty disability until July 2007, when she began a light-duty assignment as a loading dock clerk. (Dkt. 99 ¶ 18). At that time, Hunt-Golliday's medical restrictions included not lifting more than 25 pounds, not bending, stooping, or twisting excessively, and not operating heavy machinery or vibrating tools. (*Id.*). These medical restrictions would have prevented her from returning to her full-duty status as an ironworker. (*Id.*).

Although not undisputed, this Court notes that Hunt-Golliday additionally alleges that she was subjected to a hostile work environment while working as a dock clerk through the actions of her supervisors and managers, which included instructing her supervisors to write her up, pressuring her to sign petitions and donate to a political candidate, refusing to let her park in certain locations, instructing others not to trust her or to write down everything in her presence, and ignoring her

2

complaints about the aforementioned conduct. (Dkt. 120-3 64:6–24, 71:21–72:22, 75:4–23, 82:6–83:14).

Hunt-Golliday continued to work as a dock clerk until 2010, when she was transferred to the Juvenile Detention Center and, subsequently, the Administration building to perform data entry on work orders. (*Id.* ¶¶ 27, 28). While on light duty, Hunt-Golliday received quarterly reevaluations by the County physician. (*Id.* ¶ 30). In 2011, those evaluations began to reflect that Hunt-Golliday required a "power scooter or power chair at work" or that she could not walk for more than 10 minutes at a time. (Dkt. 99-12 13–16).

In 2011, Facilities director D'Amico learned from a line-item in the Cook County Finance Committee agenda that Hunt-Golliday had received an award in her worker's compensation case arising from the 2006 injury. (Dkt. 99 ¶ 44). Accordingly, and because of the federal staffing mandate, on March 1, 2012 D'Amico informed Hunt-Golliday that she was being removed from her light duty status and requested that she return to work as an ironworker. (*Id.* ¶ 45). Hunt-Golliday informed D'Amico that her job restrictions would not permit her to return to full duty and did not show up to work thereafter. (*Id.* ¶¶ 46, 47). Hunt-Golliday filed an EEOC charge on December 26, 2012 and, after receiving her notice of right to sue, brought this action. (Dkt. 50-1).

**Legal Standard**

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In determining whether a genuine issue of material fact exists, this Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, "[m]erely alleging a factual dispute cannot defeat the summary

3

judgment motion." *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

**Discussion**

Hunt-Golliday's amended complaint alleges claims of race discrimination (Count I), retaliation (Count II), disability discrimination (Count III), and sex discrimination and sexual harassment (Count IV). This Court addresses each count in turn.

*1. Race Discrimination*

Hunt-Golliday first alleges that she was discriminated against based on her race, in violation of Title VII of the Civil Rights Act of 1964. In pertinent part, Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may demonstrate a Title VII violation through either direct or indirect proof. Direct proof exists when there is sufficient evidence for a reasonable jury to conclude that the employer acted with discriminatory intent. *Brewer v. Bd. Of Trs. of Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007). The indirect method of proof requires that the plaintiff make an initial prima facie showing that (1) she was a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) similarly situated non-class members were treated more favorably than her. *Id.* Assuming that a prima facie case is made, the defendant then has the burden of offering a nondiscriminatory reason for its actions, upon which the plaintiff has an opportunity to demonstrate that the suggested reason is a mere pretext for discrimination. *Id.*

As an initial matter, this Court notes that Title VII requires that charges of discrimination be filed with the EEOC within three hundred days of the alleged unlawful employment practice.

42 U.S.C. § 2000e-5(e)(1). For the purposes of this statute of limitations, discrete discriminatory employment actions (e.g. termination, failure to promote, denial of transfer, etc.) are deemed to have been taken on the date that they occurred, even if they form part of an ongoing practice or are connected with other acts. *Beamon v. Marshall & Illsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005). Because Hunt-Golliday did not file her charge of discrimination with the EEOC until December 26, 2012, her claims of racial discrimination arising from incidents that occurred while she was working as an ironworker are untimely. Thus, this Court may only consider Hunt-Golliday's timely allegation that the Facilities department engaged in racial discrimination by refusing to reclassify her, permit her to remain on light duty, or assist her in applying for benefits when it did so for Caucasian employees.

Although the record contains evidence that several individuals with disabilities were permanently reclassified into new positions within Facilities, there is no evidence indicating the race of those employees or whether they were similarly situated to Hunt-Golliday. Similarly, there is no record evidence to show that the Caucasian employees who Hunt-Golliday has identified as being on light duty were permitted to remain on light duty for longer than she was or were given favorable treatment while on light duty (the record reflects that at least one was removed from light duty much sooner than Hunt-Golliday). Moreover, to the extent that Facilities did not assist Hunt-Golliday in applying for benefits after removing her from light duty, Hunt-Golliday concedes that the practice of offering such assistance did not begin until after she had already been removed from light duty. (Dkt. 116 ¶ 18). Accordingly, Hunt-Golliday has not established a dispute of material fact as to whether she was treated less favorably than similarly situated Caucasian coworkers on the basis of her race.

*2. Retaliation*

Hunt-Golliday also alleges that she was retaliated against in violation of the Americans with Disabilities Act (ADA). The ADA prohibits employers from retaliating against employees who assert their right under the act to be free from discrimination. 42 U.S.C. § 12203(a). Hunt-Golliday alleges that Facilities retaliated against her by removing her from light duty after she prevailed in her worker's compensation claim against Cook County.[2] The ADA's retaliation provision, however, protects only against retaliation occurring because the plaintiff "opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Conclusory assumptions aside, Hunt-Golliday offers no argument as to how her state worker's compensation claim constituted activity protected by the ADA and this Court does not independently perceive that it does so. Accordingly, Hunt-Golliday's retaliation claim fails as a matter of law.

*3. Disability Discrimination*

Hunt-Golliday also contends that Facilities discriminated against her on the basis of a disability in violation of the ADA. In order to make out a prima facie case of discrimination under the ADA, a plaintiff must show: (1) that she suffers from a disability as defined in the statute; (2) that she is qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) that she has suffered an adverse employment action as a result of her disability. *Id.* Employees bear an initial duty to inform their employer of a disability before ADA liability may be triggered for failure to provide reasonable accommodations for that disability. *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir. 1996).

---

[2] In her response brief, Hunt-Golliday additionally alleges that she was retaliated against as a result of her complaints about Title VII violations. Because Hunt-Golliday's Amended Complaint only pled a retaliation claim under the ADA and not under Title VII, this Court will not consider these newly raised allegations. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012).

Here, the medical reports concerning Hunt-Golliday's condition appear to show that she suffers from a disability under the statute. *See* 42 U.S.C. § 12102 (defining "disability" as a physical or mental impairment that substantially limits one or more major life activities, such as performing manual tasks, walking, standing, lifting, and bending). However, Hunt-Golliday has not established a dispute of material fact as to whether she was qualified to perform the essential functions of her employment with or without accommodation. Pursuant to the statute, consideration is given to the employer's judgment of what functions of a job are essential, and written job descriptions are considered evidence of the essential functions of the job. 42 U.S.C. § 12111(8). Here, the Ironworker Job Description set forth the "Key Responsibilities and Duties" of Hunt-Golliday's position as:

- Repairs and maintains items in the County Jail and Criminal Court Building and elsewhere in facilities throughout the Cook County criminal justice system such as tools, equipment, cell doors, fire escapes, vaults, safes, laundry equipment, guard towers and exterior doors.
- Replaces steel plates, grills, bars, armor glass, gates, and doors.
- Maintains and repairs security locks and assists the Master Locksmith as needed.
- Inspects and approves work done by Architectural Iron Contractors on Jail and Court Building property.
- Works from existing blueprints for the fabrication and installation of complex iron equipment necessary for the maintenance of the jail security system.
- Assists in the installation, maintenance, and repair of overhead rolling shutter doors, vertical lifts, slides, loading dock lifters and platforms and related equipment.

(Dkt. 99-13). It further set forth that Ironworkers had to be able to use tools such as an electric welder, cutting and welding torch, drill press, and hand drill, and that the position involved considerable standing, walking, lifting, pushing, and other types of physical exertion. (*Id.*).

The only reasonable accommodation that Hunt-Golliday proposes is that she be permitted to work exclusively on maintaining and repairing locks, although she concedes that she might be unable to perform that duty without additional accommodations such as the use of a scooter. (Dkt. 99-2 201:4-202:12). Hunt-Golliday concedes that, other than this limited exception, she would be

unable to fulfill most of the enumerated duties of an ironworker. (Dkt. 99-2 160:8–163:4). Because Hunt-Golliday has not presented evidence establishing that she can perform the essential functions of her job as an ironworker, she cannot establish that she is a qualified individual under the ADA and therefore cannot make out a prima facie case of disability discrimination.

*4. Sexual Discrimination and Sexual Harassment*

Finally, Hunt-Golliday alleges that she was discriminated against based on her sex and was subjected to sexual harassment and a hostile work environment in violation of Title VII of the Civil Rights Act of 1964. As previously discussed, Title VII's statute of limitations requires that claims under that statute be filed with the EEOC within 300 days of the alleged discriminatory act. *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1121 n. 4 (7th Cir. 2009). Hunt-Golliday's claims of sexual harassment, which Hunt-Golliday testified arose from incidents occurring solely in 2005 and 2006, are therefore time barred. Moreover, Hunt-Golliday has failed to state a hostile work environment claim because she has not introduced evidence establishing that the harassment she suffered was based on her sex or that it was so severe and pervasive as to alter the conditions of her employment. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005). Accordingly, Hunt-Golliday has failed to present a dispute of material fact surrounding her claims of sexual discrimination and sexual harassment.

This Court is not persuaded otherwise by Hunt-Golliday's assertion that the statute of limitations should be equitably tolled on her harassment claims because she was told her that her claims of harassment were being investigated and was encouraged not to press charges. Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if, despite all due diligence, she is unable to obtain vital information bearing on the existence of her claim. *Smith v. City of Chi. Heights*, 951 F.2d 834, 839 (7th Cir. 1992). Because Hunt-Golliday does not allege that she was

unable to bring suit because necessary facts were not apparent to her within the limitations period, equitable tolling does not apply to her claims.

## Conclusion

For the foregoing reasons, Cook County's Motion for Summary Judgment [98] is granted.

IT IS SO ORDERED.

Date:   January 26, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge